1  MARK W. ROBERTSON (S.B. #200220)
   mrobertson@omm.com
2  O'MELVENY & MYERS LLP
   7 Times Square
3  New York, NY 10036
   Telephone: (212) 326-2000
4  Facsimile: (212) 326-2061

5  KELLY WOOD (S.B. #267518)
   kwood@omm.com
6  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
7  Newport Beach, California 92660
   Telephone: (949) 823 6900
8  Facsimile: (949) 823 6994

9
   Attorneys for Defendants
10 American Airlines Group Inc., American
   Airlines, Inc., and Tim McMahan
11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  JANETTE BECKMAN, an individual, and LEEANNE HANSEN, an individual, | Case No. _____ |
| 16 | **DEFENDANTS AMERICAN AIRLINES GROUP INC. AND AMERICAN AIRLINES, INC.'S NOTICE OF REMOVAL** |
| 17              Plaintiffs, | |
| 18       v. | [Filed concurrently with Declaration of Kelly Wood; Declaration of Marjorie Powell; Declaration of Cameron Binion; Declaration of Sigsbee Nelson; Declaration of Mathew Diedrick; Request for Judicial Notice; Certificate of Interested Parties; Corporate Disclosure Statement; and Civil Case Cover Sheet] |
| 19  AMERICAN AIRLINES GROUP, INC., a Delaware corporation, AMERICAN AIRLINES, INC., a Delaware corporation, SIGSBEE "JOHN" NELSON, an individual, CAMERON BINION, an individual, TIM MCCANN, an individual and DOES 1 through 50, inclusive, | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24              Defendants. | (28 U.S.C. §§ 1332(a) and 1441(a) and (b)) |
| 25 | |
| 26 | (Los Angeles County Superior Court Case No. 20STCV25029) |
| 27 | |

28

# TABLE OF CONTENTS

Page

I.    JURISDICTION AND BASIS FOR REMOVAL. ........................................ 2

    A.    Diversity Jurisdiction. ............................................................... 2

        a.    Plaintiffs Are Citizens Of California. .............................. 2

        b.    American And AAG Are Not Citizens Of California. ........ 2

        c.    Nelson And Binion Are Not Citizens Of California. .......... 3

        d.    McMahan Was Fraudulently Joined, And Thus, His Citizenship Must Be Disregarded. ................................... 3

            i.    McMahan's Alleged Conduct Cannot Constitute Harassment As A Matter of Law. ..................... 4

            ii.    Plaintiffs' Claims For IIED and NIED Cannot Be Maintained Against McMahan. .......................... 6

        e.    The Doe Defendants Are Irrelevant. ............................... 8

    B.    The Amount-In-Controversy Requirement Is Satisfied. ...................... 9

        a.    Lost Earnings. ............................................................ 10

        b.    Civil Penalties. .......................................................... 11

        c.    Emotional Distress Damages and Damages For Injury And Medical Expenses. .............................................. 11

        d.    Punitive Damages. ..................................................... 12

        e.    Attorneys' Fees. ........................................................ 13

II.    PROCEDURAL REQUIREMENTS. .................................................. 13

III.    CONCLUSION. ............................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aucina v. Amoco Oil Co.*,
871 F. Supp. 332 (S.D. Iowa 1994) ................................................................. 13

*Ayala v. Cox*,
CV 16-06341-GHK, 2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ..................... 7

*Breyman v. Canon Solutions Am.*,
No. CV 15-9975-MRW, 2016 WL 715723 (C.D. Cal. Feb. 18,
2016) ................................................................................................................. 8

*Cofer v. Parker-Hannifin Corp.*,
194 F. Supp. 3d 1014 (C.D. Cal. 2016) .............................................................. 5

*Cole v. Fair Oaks Fire Protection Dist.*,
43 Cal.3d 148 (Cal. 1987) .................................................................................. 7

*Davenport v. Mutual Ben. Health & Acc. Ass'n*,
325 F.2d 785 (9th Cir. 1963) ............................................................................ 13

*Deering v. Lassen Cmty. Coll. Dist.*,
No. 2:07-CV-01521, 2008 WL 4570339 (E.D. Cal. Oct. 14, 2008) ................... 6

*Dubose v. Excelsion Educ. Ctr.*,
2010 WL 11556752 (C.D. Cal. Sept. 22, 2010) ................................................. 7

*EEOC v. Hacienda Hotel*,
881 F.2d 1504 (9th Cir. 1989) .......................................................................... 10

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) ............................................................................ 9

*Gomez v. Mirada Hills Rehab.*,
No. CV-15-08877-MWF-JEM, 2016 WL 370692 (C.D. Cal. Jan.
29, 2016) ............................................................................................................ 7

*Haynal v. Target Stores*,
No. 96–1599–K(RBB), 1996 WL 806706 (S.D. Cal. Dec. 9, 1996) ................... 7

*Hertz v. Friend*,
559 U.S. 77 (2010) ........................................................................................ 2, 3

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) ................................................................ 9

*Lelaind v. City & Cty. San Francisco*,
576 F. Supp. 2d 1079 (N.D. Cal. 2008) .............................................................. 6

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061 (9th Cir. 2001) ....................................................................... 4, 6

*Nielsen v. Trofholz Techs., Inc.*,
750 F. Supp. 2d 1157 (E.D. Cal. 2010), *aff'd*, 470 F. App'x 647
(9th Cir. 2012) ................................................................................................... 6

*Reno v. Baird*,
18 Cal. 4th 640 (1998) ................................................................................... 4, 5

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sanchez v. Monumental Life Ins. Co.*,
  102 F.3d 398 (9th Cir. 1996) ................................................................. 9

*Schaffer v. GTE, Inc.*,
  40 F. App'x 552 (9th Cir. 2002) ......................................................... 6, 7

*Sheppard v. Freeman*,
  67 Cal. App. 4th 339 (1998) ................................................................. 5

*Simmons v. PCR Tech.*,
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................ 9, 13

*Smith v. Brown-Forman Distillers Corp.*,
  196 Cal. App. 3d 503 (1987) .............................................................. 10

*Toscano v. Greene Music*,
  124 Cal. App. 4th 685 (2004) ............................................................. 10

*Vasquez v. Arvato Digital Servs., LLC*,
  No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261 (C.D. Cal.
  June 27, 2011) .................................................................................... 12

**Statutes**

28 U.S.C. § 1441(b)(1) ........................................................................... 8

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND PLAINTIFFS' ATTORNEYS OF RECORD:**

Pursuant to 28 U.S.C. § 1446(a), defendants American Airlines Group Inc. ("AAG") and American Airlines, Inc. ("American") invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(a) and 1441(a) and (b) and state the following grounds for removal:

1. On July 2, 2020, Plaintiffs Janette Beckman ("Beckman") and Leeanne Hansen ("Hansen") (collectively, "Plaintiffs") filed a Complaint in the Superior Court of the State of California, County of Los Angeles, styled and captioned as set forth above. In their Complaint, Plaintiffs name as defendants American and AAG, and three current or former employees of American, Sigsbee "John" Nelson ("Nelson"), Cameron Binion ("Binion"), and Tim McMahan ("McMahan").[1] This action, which arises out of Plaintiffs' employment relationship with American, was assigned case number 20STCV25029. A true and correct copy of Plaintiffs' Complaint ("Complaint" or "Compl.") is attached as Exhibit A.

2. On July 28, 2020, Plaintiffs served American with the Complaint. (*See* Exhibit B.) On July 30, 2020, Plaintiffs filed a proof of service of the summons and Complaint on American. (*Id.*) On August 4, 2020, Plaintiff served AAG with the Complaint. (*See* Exhibit C.) On August 14, 2020, Plaintiffs filed a proof of service of the summons and Complaint on AAG. (*Id.*) It is American's understanding that Nelson has been served with the Complaint. To date, Plaintiffs have not served Binion or McMahan with the Complaint.

3. No other process, pleadings, or orders have been served on American or AAG in conjunction with the state court proceeding.[2] This Notice of Removal

---

[1] Plaintiffs misspell Defendant Tim McMahan's name as "Tim McCann" in the case caption and throughout their Complaint.

[2] American was, however, served with Plaintiffs' first set of discovery requests on

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

has been filed within 30 days of service of the Complaint on American, and accordingly, the requirement of 28 U.S.C. § 1446(b) requiring removal within 30 days of service of the first defendant has been satisfied.

4.　　As set forth below, pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over all claims alleged in this action because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

## I.　JURISDICTION AND BASIS FOR REMOVAL.

5.　　Pursuant to 28 U.S.C. § 1332(a), the United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.　Diversity Jurisdiction.
#### a.　Plaintiffs Are Citizens Of California.

6.　　In their Complaint, Plaintiffs allege that they "are, and at all times … were, residents of California." (Compl. at ¶ 8.) Plaintiffs are therefore citizens of California for diversity-of-citizenship purposes.

#### b.　American And AAG Are Not Citizens Of California.

7.　　Pursuant to 28 U.S.C. § 1332(c)(1), a corporate defendant "shall be deemed to be a citizen of any State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." When ascertaining a corporate defendant's principal place of business for diversity purposes, the Supreme Court has adopted the "nerve center" approach. *Hertz v. Friend*, 559 U.S. 77, 89-93 (2010). A corporation's principal place of business or "nerve center" is "where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id*. at 93.

8.　　At the time this action was filed and presently, AAG is incorporated in

───────────────

August 10, 2020.

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

the State of Delaware.[3]  (Declaration of Marjorie Powell ("Powell Decl.") ¶ 2.)  At the time this action was filed and presently, American is also incorporated in the State of Delaware.  (*Id.*)  Additionally, and at all pertinent times, American and AAG's principal place of business is in Texas.  American maintains its corporate headquarters in Fort Worth, Texas, where its executive offices as well as its training department, flight department, flight service department, legal department, human resources department, and administrative offices are located.  (*Id.*)  Therefore, for the purposes of removal, and pursuant to 28 U.S.C. § 1332(c), American and AAG are citizens of the State of Delaware and the State of Texas.  *See Hertz*, 559 U.S. at 92-93.

### c. Nelson And Binion Are Not Citizens Of California.

9.     In their Complaint, Plaintiffs do not allege where Nelson and Binion are citizens for jurisdictional purposes, only that "at all times relevant," they were based in and/or worked in Los Angeles, California.  (Compl. ¶¶ 14-15.)

10.     At the time this action was filed, and presently, however, neither Nelson nor Binion were or are citizens of California.  Nelson is a citizen of Arizona and was at the time the Complaint was filed.  (Declaration of Sigsbee Nelson ("Nelson Decl.") ¶ 2.)  Binion is a citizen of North Carolina and was at the time the Complaint was filed.  (Declaration of Cameron Binion ("Binion Decl.") ¶ 3.)

11.     Therefore, Nelson and Binion are not citizens of California for diversity-of-citizenship purposes.

### d. McMahan Was Fraudulently Joined, And Thus, His Citizenship Must Be Disregarded.

12.     McMahan's citizenship must be disregarded for diversity purposes

---

[3] AAG is the parent, holding company of American.  AAG has no employees and thus had no (and could have no) involvement in the claims at issue in the Complaint.  AAG intends to ask Plaintiffs to voluntarily dismiss it from this litigation, and if Plaintiffs refuse, AAG will file a Motion to Dismiss.

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

because he has been fraudulently joined as a defendant.  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Such is the case here.

13. Of the 18 causes of action that Plaintiffs purport to assert, they bring four against McMahan:  (1) harassment on the basis of sex/gender under the Fair Employment Housing Act ("FEHA"); (2) harassment on the basis of disability under the FEHA; (3) intentional infliction of emotional distress ("IIED"); and (4) negligent infliction of emotional distress ("NIED").  (*See generally* Compl.)

14. In support of those four claims against McMahan, Plaintiffs make only a single factual allegation regarding McMahan, which even if true, cannot support their claims against him as a matter of law.  Specifically, Plaintiffs' sole factual allegation as to McMahan is that he offered Plaintiffs "paid time off until the COMPANY completed its investigation," and that subsequently, "[a]cting outside the usual bounds of the employment relationship, instead of following COMPANY policy, MCCANN [*sic*] contributed [*sic*] PLAINTIFFS' harassment by retracting the guaranteed paid leave just days later, leaving PLAINTIFFS on indefinite unpaid leaves of absence pending the COMPANY's investigation, which he knew would last several months."  (*Id.* ¶¶ 31-32.)

### i.   McMahan's Alleged Conduct Cannot Constitute Harassment As A Matter of Law.

15. Because McMahan's alleged conduct on its face constitutes a personnel decision, Plaintiffs' allegations against him cannot constitute harassment on the basis of sex/gender or disability under the FEHA as a matter of law.  *See, e.g.*, *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998) ("Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes

harassment."); *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 342 (1998) ("[E]mployees, regardless of their scope of employment or personal motives, cannot be individually liable for their acts or words relating to personnel actions . . . ."); *Cofer v. Parker-Hannifin Corp.*, 194 F. Supp. 3d 1014, 1019 (C.D. Cal. 2016) (noting that personnel management actions, such as "project assignments, promotion or demotion, performance evaluations, or ***compensation decisions***," may be found discriminatory if they are based on improper motives, but such actions *cannot* constitute harassment as a matter of law) (emphasis added).

16.    In *Cofer*, this Court granted an employer's motion to dismiss its former employees' claims for age and race-based harassment because the alleged harassment was "personnel-related conduct."  194 F. Supp. 3d at 1019.  The former employee alleged that his employer and several of his supervisors had refused to promote him, precluded him from participating in trainings, excluded him from meetings, and ultimately terminated him.  *Id.*  The court dismissed his harassment claim, holding that such conduct consisted of "official employment actions" and could not constitute harassment as a matter of law.  *Id.* at 1020.  The court noted that there were no allegations of offensive conduct unrelated to official employment actions that could potentially amount to harassment.  *Id.*

17.    *Cofer* is directly on point.  Plaintiffs do not allege that McMahan engaged in any offensive conduct whatsoever, other than taking "official employment actions."  Such alleged conduct cannot constitute harassment on the basis of sex/gender *or* disability under the FEHA as a matter of law.  *Id.*; *Reno*, 18 Cal. 4th at 646; *Sheppard*, 67 Cal. App. 4th at 342.

18.    Furthermore, Plaintiffs have not alleged sufficient facts to make out a prima facie case for either harassment on the basis of their sex or on the basis of their alleged disabilities, because they make no factual allegations that could link McMahan's decision to initially place them on paid leaving during the investigation and then change it to unpaid leave to either their sex or their alleged disabilities.  To

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

establish a prima facie case of harassment on the basis of sex under the FEHA, "a plaintiff must plead facts demonstrating . . . that she was subjected to verbal or physical conduct *because of* her sex." (emphasis added). *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-01521, 2008 WL 4570339, at *4 (E.D. Cal. Oct. 14, 2008); *see also Leland v. City & Cty. San Francisco*, 576 F. Supp. 2d 1079, 1101 (N.D. Cal. 2008) (noting that, to prevail on a claim for harassment, a plaintiff must show "that she was subjected to verbal or physical conduct *because of* a protected characteristic.") The same standard applies to claims for harassment on the basis of disability. *See Nielsen v. Trofholz Techs., Inc.*, 750 F. Supp. 2d 1157, 1168 (E.D. Cal. 2010), *aff'd*, 470 F. App'x 647 (9th Cir. 2012) (noting that "[h]arassment because of disability is subject to the same standard as sexual harassment"; that is, that an employee "must show that the harassing conduct was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees *because of* their [] disability.") Here, Plaintiffs do not make a single allegation in their Complaint that even attempts to link McMahan's alleged conduct to either Plaintiffs' gender or their alleged disabilities, and therefore they fail to state a claim for harassment against McMahan.

19. For these reasons, there is no possibility that Plaintiffs can prevail on either harassment claim asserted against McMahan.

### ii. Plaintiffs' Claims For IIED and NIED Cannot Be Maintained Against McMahan.

20. For similar reasons, "it is abundantly obvious that [Plaintiffs] could not possibly prevail on" their final two causes of action against McMahan for IIED and NIED. *Morris*, 236 F.3d at 1067. Under well-settled law, IIED and NIED claims cannot be maintained against employers or agents of those employers (such as supervisors and other employees) for taking personnel management-related actions or other actions "within the context of the employment relationship." *See Schaffer*

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

*v. GTE, Inc.*, 40 F. App'x 552, 557-58 (9th Cir. 2002); *see also Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (Cal. 1987); *Haynal v. Target Stores*, No. 96–1599–K(RBB), 1996 WL 806706, at *6 (S.D. Cal. Dec. 9, 1996). Instead, such claims are "within the exclusive remedy provisions of the California Workers' Compensation Act." *Schaffer*, 40 F. App'x at 557; *see also Dubose v. Excelsion Educ. Ctr.*, 2010 WL 11556752, at *13 (C.D. Cal. Sept. 22, 2010) ("Here, Dubose's negligent supervision, NIED, and IIED claims implicate Excelsior's agents and 'supervisors['] . . . unlawful behavior,' and their actions in 'asserting their power over' her . . . . [These] claims are barred by worker's compensation exclusivity.") (internal citations omitted). All that Plaintiffs have alleged is that McMahan offered them paid leave and then withdrew that offer. (Compl. ¶ 31.) Such conduct falls squarely within the realm of garden-variety personnel management activity.

21. Several California Central District Courts have found that individual supervisor defendants were fraudulently joined in nearly identical cases to this one (with the only difference being there were more allegations against the individual supervisor than Plaintiffs make here). Thus, the result should be the same here. In *Ayala v. Cox*, CV 16-06341-GHK (ASx), 2016 WL 6561284 (C.D. Cal. Nov. 4, 2016), the plaintiff, similar to Plaintiffs here, sought to avoid removal by asserting an IIED claim against a supervisor, who was a resident of California. The plaintiff alleged that the individual supervisor he named as a defendant relocated him on short notice, gave him an office in poor condition, reprimanded him, put him on a performance improvement plan, gave him difficult assignments, and terminated his employment. *Id*. at *1, *3. The court held: "[s]ince all of this conduct 'f[ell]' within the confines of [the supervisor's] managerial role, it could not rise to an IIED claim." *Id*. at *3 (brackets in original). And because the plaintiff could not recover from the individual defendant, the court concluded that he was fraudulently joined, and disregarded him for purposes of the jurisdictional analysis. *Id*. at *4; *see also Gomez v. Mirada Hills Rehab.*, No. CV-15-08877-MWF-JEM, 2016 WL

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

370692, *5 (C.D. Cal. Jan. 29, 2016) (denying motion to remand on fraudulent joinder grounds and dismissing the individual defendants because the plaintiffs had failed to allege that they "acted outside [their] managerial role").

22.     Similarly, in *Breyman v. Canon Solutions Am.*, No. CV 15-9975-MRW, 2016 WL 715723 (C.D. Cal. Feb. 18, 2016), the court found that the plaintiff had fraudulently joined an individual supervisor as a defendant to avoid diversity jurisdiction.  The plaintiff brought an IIED claim against his individual supervisor for allegedly "retaliating against him for requesting reasonable accommodations," making harassing comments about the plaintiff's employment status, and "concealing the deadline for [the plaintiff] to return to work." *Id.* at *3.  The court found that the plaintiff's IIED claim against that defendant "f[e]ll squarely within the sphere of personnel management acts" that were insufficient to constitute IIED. *Id*. at *3.  The court further noted that the minimal allegations against the individual defendant, and the fact that the individual defendant was not served before removal, all pointed to fraudulent joinder. *Id*.  Significantly, all of those circumstances are present here.  Plaintiffs have not served McMahan, and their Complaint contains minimal, managerial related, allegations against him.  (*See generally* Compl.; Declaration of Kelly Wood ("Wood Decl.") ¶ 2.)

23.     Because Plaintiffs have no possibility of prevailing on any one of their claims against McMahan, he should be disregarded for jurisdictional purposes.

**e.     The Doe Defendants Are Irrelevant.**

24.     The Complaint also names 50 "Does" as defendants.  For purposes of removal, however, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

25.     Because American, AAG, Nelson and Binion are not citizens of California, Plaintiffs are citizens of California, and the domicile of no other defendant should be considered, the diversity requirement of 28 U.S.C. § 1332(a)(1) is satisfied.

1    **B.**    **The Amount-In-Controversy Requirement Is Satisfied.**

2        26.    Without conceding that Plaintiffs are entitled to damages or can

3    recover damages in any amount whatsoever, the amount in controversy in this case

4    exceeds the sum or value of $75,000, as required by 28 U.S.C. § 1332(a).  Where a

5    plaintiff's state court complaint is silent as to the amount of damages claimed, the

6    removing defendant need only establish that it is more likely than not that the

7    plaintiff's claims, if found valid, exceed the jurisdictional minimum.  *Sanchez v.*

8    *Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  Here, Plaintiffs'

9    Complaint states that it seeks compensatory damages "in an amount to be

10   ascertained at trial," as well as civil penalties in the amount of $25,000 per plaintiff,

11   and unspecified amounts of punitive damages, reimbursement of "necessary

12   business expenses," interest, and attorneys' fees and costs.  (Compl. Prayer for

13   Relief at 31:6-22.)  Because the Complaint is silent as to whether the amount

14   sought exceeds $75,000, the preponderance of the evidence standard applies to

15   determine whether the amount of controversy exceeds the jurisdictional minimum.

16   *Sanchez*, 102 F.3d at 404.

17       27.    In determining whether the amount in controversy exceeds $75,000,

18   the Court must presume that Plaintiffs will prevail on each and every one of their

19   claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d

20   993, 1001 (C.D. Cal. 2002).  The amount in controversy may include general and

21   special compensatory damages, punitive damages, and attorneys' fees which are

22   recoverable by statute.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th

23   Cir. 1998); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031-35 (N.D. Cal.

24   2002).

25       28.    Plaintiffs seek compensatory damages, including lost past and future

26   wages, emotional distress damages, and damages for injury and medical expenses,

27   civil penalties, punitive damages, and attorneys' fees and costs pursuant to eighteen

28   causes of action.  (Compl. Prayer for Relief at 31:6-22.)  All of this requested relief

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

1   must be considered in calculating the amount in controversy.  *Id.*

2              **a.    Lost Earnings.**

3        29.    Plaintiffs allege that they are entitled to recover "compensatory

4   damages, including but not limited to lost past and future wages."  Plaintiffs'

5   claimed "lost past wages" would be the amount of money Plaintiffs would have

6   earned from the date of the alleged adverse employment action to the date of trial.

7   *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1518 (9th Cir. 1989).  Plaintiffs'

8   recovery could include not only lost wages or salary, but also any alleged loss of

9   employment benefits.  *Id.*  Plaintiffs' claim for future wages would equate to the

10  wages and benefits Plaintiffs would have earned after the time of trial.  *Smith v.*

11  *Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1987).  Claims for

12  future wages are generally measured by the employee's projected earnings and

13  benefits from trial until the time the employee is likely to become reemployed.  *See*

14  *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 695-97 (2004).

15       30.    Beckman is a flight attendant who is paid at a rate of $68.25 per hour.

16  (Declaration of Mathew Diedrick ¶ 2.)  While Beckman's hours varied, in the six

17  months prior to her taking a leave of absence, she generally worked between 30 and

18  45 hours per week.  (*Id.*)  Hansen is also a flight attendant who is paid at a rate of

19  $68.25 per hour.  (*Id.*)  In the six months prior to her taking a leave of absence, she

20  generally worked between 25 and 50 hours per week.  (*Id.*)  In the event Plaintiffs'

21  claims have merit (which they do not), they could recover at least $3,753.75 in

22  alleged lost earnings per week since the time they took their leaves of absence.[4]

23  Plaintiffs have both been on leaves of absence for over 15 months, since May of

24

_____

25  [4] Using the lower estimate of 30 hours per week for Hansen, Hansen would have
    earned $2,047.50 per week that she has been out of work (30 x $68.25 =
26  $2,047.50).  Using the lower estimate of 25 hours per week for Beckman, Beckman
    would have earned $1,706.25 per week that she has been out of work (25 x $68.25
27  = $1,706.25).  Together, their claims for lost earnings could theoretically amount to
    $3,753.75 per week that they have been on leaves of absence.
28

                                    DEF. AMERICAN AIRLINES GROUP INC.
                                    AND AMERICAN AIRLINES, INC.'S
                                    NOTICE OF REMOVAL

2019.  (*Id.*)  Accordingly, if Plaintiffs' claims are valid (which they are not), their damages for lost earnings alone could potentially be more than $259,008.75, exceeding the jurisdictional minimum.[5]

**b.  Civil Penalties.**

31.  Plaintiffs also assert a claim for civil penalties under California Civil Code § 52(b).  In their prayer for relief, Plaintiffs allege they are entitled to "civil penalties in the amount of $25,000 for each PLAINTIFF."  As such, they are seeking a total of $50,000 in civil penalties.  This amount, added to Plaintiffs' claimed lost earnings, far exceeds the jurisdictional minimum of $75,000.

**c.  Emotional Distress Damages and Damages For Injury And Medical Expenses.**

32.  If Plaintiffs prevail, they could also recover damages for alleged emotional distress, physical injuries, and medical expenses.  Emotional distress damages awards in California employment cases often alone meet or exceed the jurisdictional threshold.  *See, e.g.*, *Kuwahara v. Asahi Gakuen*, BC454896, 2014 Jury Verdicts LEXIS 4906 (February 2014 Los Angeles jury awarded $1,300,000 in non-economic emotional distress damages where employee was discriminated, harassed, and retaliated against); *Bergren v. Fu-Gen Inc.*, BC463918, 2014 Jury Verdicts LEXIS 7813 (July 2014 Los Angeles jury awarded $97,916 in non-economic emotional distress damages for employment discrimination and retaliation); *Angel v. Sutter Health*, 2009-00055279, 2013 Jury Verdicts LEXIS 7773 (June 2013 California jury awarded $500,000 in non-economic emotional distress damages in employment discrimination case); *Burton v. Pulmocare Respiratory Servs.*, CIVDS-15-09192, 2016 WL 6962191 (October 2016 San Bernardino jury awarded $175,000 for non-economic past emotional distress damages and $100,000 for future emotional distress in employment discrimination,

---

[5] $3,753.75 per week x 69 weeks between May 1, 2019 and the date of this Notice of Removal = $259,008.75.

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

retaliation, and wrongful termination case); *Hernandez v. Pac. Bell Tel. Co.*, 37-24-00014271-CU-WT-CTL, 2016 WL 2758062 (April 2016 San Diego jury awarded $500,000 for non-economic past and $1,000,000 for future loss of "enjoyment of life, mental suffering, anxiety, humiliation, grief, inconvenience, physical pain or impairment, and emotional distress" in employment discrimination and retaliation case); *Mackey v. Helinet Aviation Servs. LLC*, BC528671, 2016 WL 737961 (January 2016 Los Angeles jury awarded $850,000 for non-economic past and $170,000 for future emotional distress, physical pain, loss of enjoyment of life, anxiety and humiliation in harassment and retaliation case).  The above-described examples of California employment verdicts involving discrimination, harassment, and retaliation claims are attached to American's Request for Judicial Notice, which has been filed concurrently with this notice of removal.[6]  If American's conduct is found to be unlawful (which it was not) and is found to have caused the injuries described above (which it did not), then Plaintiffs could potentially recover a significant amount in damages for emotional distress.

33.   Though Plaintiffs' prayer for lost wages, civil penalties, and emotional distress damages, standing alone, more than satisfies the jurisdictional threshold, Plaintiffs also allege medical expenses due to American's and other Defendants' alleged conduct.  (Compl. Prayer for Relief at 31:6-8.)  If Plaintiffs establish that American and/or other Defendants caused them physical and/or psychological injury, they could potentially recover money for medical expenses as well.

**d.   Punitive Damages.**

34.   Moreover, Plaintiffs additionally seek punitive damages "in an amount sufficient to punish or make an example of DEFENDANTS."  (Compl. Prayer for

---

[6] Courts routinely take judicial notice of jury verdicts in cases involving similar claims in determining whether the amount-in-controversy requirement has been satisfied.  *See Vasquez v. Arvato Digital Servs., LLC*, No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261, at *2 (C.D. Cal. June 27, 2011).

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

Relief at 31:11-13.)  Punitive damages are also included in calculating the amount in controversy.  *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963).  Indeed, for large companies with substantial assets, a claim for punitive damages "might alone" exceed the jurisdictional prerequisite.  *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (punitive damage claim against Fortune 500 Company satisfied amount-in-controversy requirement because more than $75,000 in punitive damages would be necessary to "capture the defendant's attention" and deter future similar conduct).  American is a large company with substantial assets.  Thus, although American vigorously denies Plaintiffs' allegations, if Plaintiffs established liability for punitive damages, the potential punitive damage award, alone, could exceed $75,000.

### e. Attorneys' Fees.

35.  Plaintiffs seek an award of attorneys' fees, which also must be taken into account in computing the amount in controversy.  "Attorneys' fees may be included in the amount in controversy if recoverable by statute or contract."  *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).  That is the case here, according to Plaintiffs' Complaint.  (Compl. ¶¶ 69, 76, 83, 91, 99, 109, 116, 123, 167 & Prayer for Relief at 31:21.)  Further, courts have noted in assessing whether the amount-in-controversy requirement has been met that attorneys' fees in individual employment cases often exceed damages.  *Simmons*, 209 F. Supp. 2d 1029 at 1035.  As such, the amount-in-controversy requirement would likely be met even without considering lost wages, emotional distress damages, medical expenses, civil penalties, punitive damages, or any of the other relief sought by Plaintiff.

36.  Accordingly, the amount in controversy in this case exceeds $75,000.

## II. PROCEDURAL REQUIREMENTS.

37.  American satisfies the procedural requirements for removal.

38.  Plaintiff's state court action was commenced in the Superior Court of

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

the State of California for the County of Los Angeles and, pursuant to 28 U.S.C. §§ 84(c) and 1446(a), may be removed to this United States District Court for the Central District of California, Western Division, which embraces Los Angeles County within its jurisdiction.

39. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon American and AAG in the state court action are attached as Exhibits A-B.

40. Pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is timely because it was filed within 30 days of American's receipt of the Complaint through service.

41. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be served upon Plaintiffs' counsel and a copy filed with the Clerk of Court for Department 15 of the Superior Court of the State of California, County of Los Angeles.

## III. **<u>CONCLUSION</u>**.

42. For the reasons detailed above, pursuant to 28 U.S.C. §§ 1332, and 1441(a) and (b), this state court action may be removed to federal district court, and American respectfully requests that it be so removed.

WHEREFORE, American respectfully gives notice of and removes this action to this Court.

Dated:  August 27, 2020

MARK W. ROBERTSON
KELLY WOOD
O'MELVENY & MYERS LLP

By: _____/s/ Kelly Wood_____
Kelly Wood
Attorneys for Defendants American
Airlines Group Inc., American Airlines,
Inc., and Tim McMahan

DEF. AMERICAN AIRLINES GROUP INC.
AND AMERICAN AIRLINES, INC.'S
NOTICE OF REMOVAL

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 07/02/2020 11:46 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case 2:20-cv-07868-MWF-MRW   Document 1-1   20STCV25029   Filed 08/27/20   Page 20 of 57   Page ID #:20

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Richard Fruin

BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
101 S. 1st Street, Suite 407
Burbank, CA 91502
Telephone:     818.900.0695
Facsimile:     818.900.0723

Attorneys for Plaintiffs
JANETTE BECKMAN and LEEANNE HANSEN

**SUPERIOR COURT FOR OF STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| JANETTE BECKMAN, an individual, and LEEANNE HANSEN, an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>AMERICAN AIRLINES GROUP INC., a Delaware corporation, AMERICAN AIRLINES, INC., a Delaware corporation, SIGSBEE "JOHN" NELSON, an individual, CAMERON BINION, an individual, TIM MCCANN, an individual and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.  20STCV25029<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  **SEXUAL BATTERY;**<br>2.  **BATTERY;**<br>3.  **ASSAULT;**<br>4.  **HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF FEHA;**<br>5.  **DISCRIMINATION ON THE BASIS OF SEX/GENDER IN VIOLATION OF FEHA;**<br>6.  **DISCRIMINATION ON THE BASIS OF DISABILITY AND/OR MEDICAL CONDITION IN VIOLATION OF FEHA;**<br>7.  **HARASSMENT ON THE BASIS OF DISABILITY AND/OR MEDICAL CONDITION IN VIOLATION OF FEHA;**<br>8.  **FAILURE TO ACCOMMODATE IN VIOLATION OF FEHA;**<br>9.  **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;** |

1

COMPLAINT FOR DAMAGES

10. **RETALIATION FOR OPPOSING PRACTICES FORBIDDEN BY FEHA;**
11. **FAILURE TO PREVENT, INVESTIGATE, AND REMEDY HARASSMENT, DISCRIMINATION, AND/OR RETALIATION IN VIOLATION OF FEHA;**
12. **WHISTLEBLOWER RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5;**
13. **WHISTLEBLOWER RETALIATION IN VIOLATION OF LABOR CODE SECTION 6310;**
14. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
15. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
16. **NEGLIGENT RETENTION/SUPERVISION;**
17. **FAILURE TO REIMBURSE BUSINESS EXPENSES IN VIOLATION OF LABOR CODE SECTION 2802;**
18. **VIOLATION OF CIVIL CODE SECTION 51.7 (RALPH ACT).**

**DEMAND FOR JURY TRIAL.**

COMPLAINT FOR DAMAGES

Plaintiffs JANETTE BECKMAN ("BECKMAN") and LEEANNE HANSEN ("HANSEN") (hereinafter collectively referred to as "PLAINTIFFS") bring this action as individuals against AMERICAN AIRLINES GROUP INC. ("AAG"), a Delaware corporation, AMERICAN AIRLINES, INC. ("AA"), a Delaware corporation (AAG and AA are hereinafter referred to collectively as "AMERICAN" or "the COMPANY"), SIGSBEE "JOHN" NELSON ("NELSON"), an individual, CAMERON BINION ("BINION"), an individual, and TIM MCCANN ("MCCANN"), an individual. ] (the aforementioned defendants are referred to collectively as "DEFENDANTS").   PLAINTIFFS complain and allege as follows on the basis of personal knowledge and/or information and belief:

## INTRODUCTION

1.     This case is a shocking example of a patriarchal playground where almost exclusively male "assets" known as pilots are allowed to roam free to assault flight attendants as they please while AMERICAN sits idly by, failing to properly train its workforce or otherwise restrain abusive misconduct towards the employees or the customers it is obligated to protect.   In this case, AMERICAN allowed a known sexual predator to drunkenly harass and physically assault lifelong flight attendants who had devoted their entire professional lives to providing excellent service for AMERICAN's customers.   Instead of protecting them or effectively addressing PLAINTIFFS' complaints about a compromised pilot who could be unknowingly risking AMERICAN's customers' lives while aboard an aircraft with a drunken pilot, AMERICAN chose to protect its "asset," and allow PLAINTIFFS to be retaliated against.   This cavalier attitude toward blatant sexual assault in the #MeToo era can only be explained by the hubris of the dysfunctional workplace culture of the airline industry, and AMERICAN in particular, which has willfully ignored rampant sexual assault in its midst for decades.

2.     Public awareness of these issues, through national news and magazine articles, has been prolific.   According to one source, "[w]omen constitute nearly 80% of U.S. flight attendants, and more than two-thirds of them have been sexually harassed during their careers, according to a

recent survey by the Assn. of Flight Attendants-CWA"[1]   At the same time, flight attendants are disincentivized from reporting such incidents, and "only 7% of flight attendances [*sic*] who have experienced abuse have reported it . . . ."[2]   As part of this culture of silence and hierarchical oppression, AMERICAN did not act to protect its flight attendants or the flying public, and instead retaliated against PLAINTIFFS when they were forced to speak up for themselves and blow the whistle on DEFENDANTS' illegal activities.   Unfortunately, PLAINITFFS' worst fears were realized when they suffered extensive retaliation for having the courage to report pilot sexual misconduct and demand that action be taken.   This lawsuit seeks to hold all DEFENDANTS accountable for their roles in perpetrating, and enabling the harassment and intimidation of PLAINTIFFS.

## JURISDICTION AND VENUE

3.      The Superior Court of the State of California has jurisdiction over this action pursuant to California Constitution Article VI, section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts."

4.      The Superior Court of the State of California has jurisdiction over this matter. PLAINTIFFS are residents and citizens of, and are domiciled in, the State of California. Moreover, upon information and belief, at least one Defendant is a citizen of California, the alleged harassing, discriminatory, and retaliatory acts  occurred in California, significant relief is being sought against DEFENDANTS whose violations of California employment laws form a significant basis for PLAINTIFFS' claims.  Further, no federal question is at issue because the claims are based solely on California law and at least one Defendant is a resident of, and/or regularly conducts business in the State of California.

---

[1] Elliot Hester, *Passengers Aren't the Only Ones who Suffer Sexual Abuse – So Do Flight Attendants,* Los Angeles Times, May 13, 2019, available at: https://www.latimes.com/travel/la-tr-travel-fly-guy-sexual-harassment-flight-attendants-20190506-story.html.

[2] Hugo Martín, *Flight Attendants Say Airlines Have Failed to Address Sexual Harassment in the Skies,* Los Angeles Times, May 12, 2018, available at: https://www.latimes.com/business/la-fi-travel-briefcase1-flight-attendant-harassment-20180512-story.html.

5.      Venue is proper in this judicial district and the County of Los Angeles, California because PLAINTIFF performed work for DEFENDANTS in the County of Los Angeles, and many of DEFENDANTS' illegal acts, which are the subject of this action, occurred in the County of Los Angeles.  Thus, a substantial portion of the transactions and occurrences related to this action occurred in this county.  Cal. Civ. Proc. Code § 395.

6.      Prior to filing this action, PLAINTIFFS timely exhausted their administrative remedies, each by filing an administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right to sue letter on April 29, 2020.

7.      The doctrines of equitable tolling and continuing violations apply to PLAINTIFFS' claims herein.  *See Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001); *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88 (2008).

## PARTIES

8.      PLAINTIFFS are individuals who are, and at all times herein mentioned were, residents of California.

9.      AAG is, and at all times mentioned in this Complaint was, an entity incorporated in Delaware, headquartered in Texas, and conducting business in California.  At all relevant times herein, AAG has employed PLAINTIFFS within the meaning of California Government Code section 12926(d) and the Labor Code.

10.     AA is, and at all times mentioned in this Complaint was, an entity incorporated in Delaware, headquartered in Texas, and conducting business in California.  At all relevant times herein, AA has employed PLAINTIFFS within the meaning of California Government Code section 12926(d) and the Labor Code.

11.     PLAINTIFFS are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other DEFENDANTS, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other DEFENDANTS.

12.     PLAINTIFFS are informed and believe, and thereon allege, that AAG and AA each has employed PLAINTIFF, in that they exercised control over PLAINTIFF'S wages, hours or

working conditions, suffered and permitted PLAINTIFF to work, and/or engaged PLAINTIFF to work.  *See Martinez v. Combs*, 49 Cal.4th 35, 64 (2010).  Any of the three is sufficient to create an employment relationship.

13.     To the extent one or more of DEFENDANTS did not directly hire, fire, or supervise PLAINTIFFS, PLAINTIFFS further allege that, upon information and belief, one or more DEFENDANTS control the business enterprises of one or more of the other DEFENDANTS, thereby creating an employment relationship with PLAINTIFF.  *See Castaneda v. Ensign Group, Inc.*, 229 Cal.App.4th 1015, 1017-1018 (2014); *Guerrero v. Superior Court*, 213 Cal.App.4th 912, 950 (2013).

14.     PLAINTIFFS are informed and believe that at all times relevant herein, NELSON was employed by AMERICAN as a pilot, under the title of First Officer, whose home base was Los Angeles, California.

15.     PLAINTIFFS are informed and believe that at all times relevant herein, BINION was employed by AMERICAN as a Flight Service Manager who worked in Los Angeles, California.

16.     PLAINTIFFS are informed and believe that at all times relevant herein, MCCANN was employed by AMERICAN as a Flight Service Director who worked in Los Angeles, California.

17.     The true names and capacities of DOES 1 through 50, inclusive ("DOES"), are unknown to PLAINTIFFS at this time, and PLAINTIFFS therefore sue such DOE Defendants under fictitious names.  PLAINTIFFS are informed and believe, and thereon allege, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that PLAINTIFFS' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants.  PLAINTIFFS will seek leave of the court to amend this complaint to allege the true names and capacities of such DOE Defendants when ascertained.

18.     PLAINTIFFS are informed and believe, and thereon allege, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of, each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

19.     PLAINTIFFS are informed and believe, and based thereon allege, that each DEFENDANT acted in all respects pertinent to this action as the agent of the other DEFENDANTS, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each DEFENDANT are legally attributable to the other DEFENDANTS.

20.     As a direct and proximate result of the unlawful actions of DEFENDANTS, PLAINTIFFS have suffered, and continue to suffer, from loss of earnings in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Overview of PLAINTIFFS' Employment*

21.     PLAINTIFFS have been employed by AMERICAN as flight attendants for over 40 years, each.  Both over the age of 60, PLAINTIFFS should be continuing to perform excellently in jobs to which they have dedicated their lives.  Instead, they find themselves disgraced among their peers and isolated from the company to which they have devoted the past four-plus decades, just because they had the courage to stand up to a pilot who sexually assaulted and harassed them in the workplace—joining an exceptionally small group of flight attendants who have done so.

### *PLAINTIFFS' Protected Status*

22.     PLAINTIFFS, females, were sexually harassed during their employment with the COMPANY.  Consequently, PLAINTIFFS are protected employees, as defined under the California Fair Employment and Housing Act ("FEHA").  *See* Cal. Gov't Code § 12940, *et seq*.  Additionally, PLAINTIFFS engaged in protected activity when they opposed harassment and other unlawful activity at the COMPANY.  Thus, PLAINTIFFS are also protected employees under the California Labor Code ("Labor Code").  *See* Cal. Lab. Code §§ 1102.5, 6310.  Following their illegal treatment by DEFENDANTS, PLAINTIFFS each took a medical leave of absence to address their psychological and physical injuries arising from their mistreatment, and as such a protected employees with a disability pursuant to the FEHA.

### *PLAINTIFFS Were Sexually Assaulted, Battered, and Harassed by NELSON.*

23.     PLAINTIFFS were working as flight attendants on a flight leaving from their home base of Los Angeles, California When NELSON, in search of alcohol, walked to the aft galley of the

plane, knowing there was a supply.  NELSON asked for alcohol from BECKMAN, who, concerned about the safety of hundreds of passengers and her fellow crew members, denied NELSON's request.

24.     Dissatisfied with BECKMAN's refusal to enable his on-duty drinking and flying, NELSON began sexually harassing her.  He stated, unprovoked, "I know you like S&M (sadomasochism) and I know you like to be tied up."  BECKMAN made it clear NELSON's conduct was unwelcome.

25.     HANSEN, who had overheard the exchange, sat next to BECKMAN.  NELSON then turned his unwelcome advances toward HANSEN and, seeing lanyards in HANSEN's bag, stated, "Oh, you're into ropes?  Do you wanna come to my room and tie me up?"  HANSEN immediately objected to NELSON's comment.  Unrelenting, NELSON then said, "Oh, you're one of *those*.  You want me to tie *you* up?"

26.     Later, apparently dissatisfied with the cold response he had received from PLAINTIFFS, NELSON, startling HANSEN from behind, grabbed HANSEN by her hips, dug his nails into her hip bones, and repeatedly and violently thrust his penis into HANSEN's buttocks.  NELSON's actions, which BECKMAN and other personnel witnessed, were completely unwelcome.  These acts occurred while PLAINTIFFS and NELSON were in uniform and on duty.

27.     PLAINTIFFS promptly reported the harassment, assault, and battery NELSON inflicted upon them to Captain Sipovac, the pilot in charge of the flight.  PLAINTIFFS also expressed concern over NELSON's potential drinking of alcohol during the flight, jeopardizing the safety of passengers and the flight crew.  Far from surprised, Captain Sipovac shared that, in the cockpit, NELSON boasted of his sexual conquests with underage prostitutes—in reality, child sex slaves— and visits to strip clubs during layovers, even showing pictures he kept as mementos.  In addition, it was common knowledge to those who had flown with NELSON that he drank alcohol to excess on the job.  On one trip, he imbibed so much while in uniform on the flight crew's shuttle that he drunkenly fell down and split his pants open.

28.     Instead of taking prompt remedial action in response to the reported harassment, assault, and battery, as required by law, Captain Sipovac deferred to PLAINTIFFS, asking them what they wanted him to do.  It was apparent the COMPANY failed its employees by not equipping them

with proper training on how to address reported harassment, assault, and battery that occurred in the workplace.  In fact, horrifyingly, NELSON was allowed to work the return leg on the same flight as PLAINTIFFS.  After the flight landed, NELSON referred unapologetically to his harassment, making it clear that he intended to continue his harassing behavior.

29.   As a result of NELSON's harassment, assault, and battery, HANSEN was forced to take stress leave.  BECKMAN attempted to continue working until she was forced to fly with NELSON just a week later, which she only did because Captain Sipovac said he would look out for her.  Despite Sipovac's presence, NELSON seized another opportunity to harass BECKMAN, by approaching her from behind, getting too close to her, and whispering in her ear.  NELSON also again entered the galley after the passengers had deplaned, when he should not have been there, apparently rummaging in the bar cart for alcohol.  Feeling like the COMPANY would not protect her, BECKMAN also went on stress leave.

### PLAINTIFFS Reported NELSON's Sexual Assault, Battery, and Harassment, and Were Retaliated Against for Doing So.

30.   After the return leg of PLAINTIFFS' joint flight with NELSON, Sipovac recommended that PLAINTIFFS contact the Allied Pilots Association's Professional Standards for Pilots ("PSP") to report NELSON's misconduct, when he should have immediately contacted the COMPANY's Human Resources department—another indication of the COMPANY's failure to train properly on handling reported harassment, assault, and battery.  Unsurprisingly, when PLAINTIFFS lodged a complaint with PSP, PSP excused NELSON's misconduct—including jeopardizing the safety of hundreds of passengers while potentially flying inebriated—because NELSON was a mere two years away from retirement.

31.   PLAINTIFFS then each filed a formal complaint with the COMPANY's Human Resources department, detailing NELSON's gross sexual harassment, assault, and battery, suspected drinking of alcohol on-the-job, and the events that followed.  Shortly thereafter, the COMPANY and MCCANN offered PLAINTIFFS a "PW, Withheld from Service, Paid," meaning paid time off until the COMPANY completed its investigation.  Acting outside the usual bounds of the employment relationship, instead of following COMPANY policy, MCCANN contributed PLAINTIFFS'

harassment by retracting the guaranteed paid leave just days later, leaving PLAINTIFFS on indefinite unpaid leaves of absence pending the COMPANY's investigation, which he knew would last several months.

32.     As further evidence of the COMPANY's harassing and retaliatory intent, the COMPANY granted NELSON, who had been placed on leave pending investigation, the same "PW, Withheld from Service, Paid" status that MCCANN had denied PLAINTIFFS.  Thus, NELSON was rewarded, while his victims, PLAINTIFFS, were harassed and punished for speaking out against NELSON's harassment, assault, battery, and potential endangerment of passengers and flight crew members.

***PLAINTIFFS Remained On Unpaid Leave for Months During its Purported Investigation, Permitting Rumors to Spread and Causing Them Significant Distress and Economic Loss***

33.     The COMPANY purported to investigate NELSON's conduct.  During the course of that alleged investigation, the COMPANY's Human Resources representative met in person with PLAINTIFFS.  During PLAINTIFFS' respective meetings, the representative required PLAINTIFFS to reenact NELSON's sexual battery, even though it was obviously emotionally traumatizing to PLAINTIFFS for them to do so.  Due to the Human Resources representative's desire to catch a flight, she cut short BECKMAN's interview without obtaining all of the pertinent facts surrounding her experience.

34.     In violation of California law and public policy, the COMPANY's Human Resources representative told PLAINTIFFS that they could not discuss their complaints, or any details associated with it, with anyone else while the investigation was pending.

35.     The COMPANY did not pay PLAINTIFFS for their time meeting (or waiting to meet) with the Human Resources representative.  Nor did the COMPANY reimburse PLAINTIFFS for the costs to park for hours, to meet at the COMPANY's offices at Los Angeles International Airport, at the COMPANY's request.

36.     For almost half a year, the COMPANY did not apprise PLAINTIFFS of any additional steps taken to investigate their complaints, or any corrective action taken.  This prolonged silence, combined with the COMPANY's illegal mandate of silence from PLAINTIFFS, knowingly

allowed rumors to fester regarding PLAINTIFFS, including allegations that they had wrongfully caused NELSON's termination from the COMPANY, and that they not victims but were opportunists pursuing the matter just to game the system.  The COMPANY took no steps to quash those harassing rumors, intended to make it impossible for PLAINTIFFS to return to work.

37.     During this time frame, PLAINTIFFS became aware that at least one pilot, who was known for carrying a gun in the cockpit while on duty, was seeking revenge on behalf of NELSON.  The pilot approached PLAINTIFFS' fellow flight attendants, with PLAINTIFFS' name and employee identification number written on a piece of paper he kept in his pocket, and asked if the flight attendants knew PLAINTIFFS.  His manner was menacing, and caused PLAINTIFFS to fear for their safety if they were to return to work.

38.     Approximately six months after PLAINTIFFS initiated their formal complaint, the COMPANY mailed PLAINTIFFS a letter that stated simply that "the matter ha[d] been closed; and appropriate action ha[d] been taken."   At no point did (or has) the COMPANY contacted PLAINTIFFS to determine how the COMPANY could accommodate them, including how the COMPANY could return them to work without further retaliation.

39.     In fact, instead of accommodating PLAINTIFFS' disabilities or engaging in an interactive process to return them to work, the COMPANY has harassed, discriminated against, and retaliated against PLAINTIFFS.  Among other things, the COMPANY schedules PLAINTIFFS for work trainings and trips, and then, when they do not show up because they are on known doctor-prescribed medical leave, the COMPANY angrily calls and messages PLAINTIFFS, exacerbating their symptoms.  Even after PLAINTIFFS complained of such conduct, the COMPANY has responded by issuing write-ups for failing to report for work, issuing disciplinary points that, if accrued to a certain level, will result in termination of employment.

40.     The COMPANY and BINION also interfered with PLAINTIFFS' medical benefits, arranging them to be cut off as a means of further harassing PLAINTIFFS, even though they knew PLAINTIFFS desperately needed their health benefits.  This additional harassment resulted in exacerbated medical conditions for both PLAINTIFFS, including medical problems that were life-threatening.

41.     The foregoing has caused PLAINTIFFS additional emotional distress during a period when they are still trying to recover from the harassment, assault, battery, and other retaliation they already experienced.

42.     Meanwhile, the COMPANY gave NELSON, the harasser, assaulter, and batterer, vastly superior treatment.  Not only did he receive paid leave pending the COMPANY's purported investigation, but it is likely that the COMPANY also gave him substantial economic benefit when he ultimately departed the COMPANY.

43.     In acts of further harassment and retaliation, BINION and the COMPANY sent BECKMAN a disciplinary letter for failing to appear at work when she was on a known medical leave of absence.  The letter threatened to terminate her if she missed more work.  The COMPANY followed up with harassing voice mail messages.  Even after BECKMAN provided proof of her doctor-approved leave, the COMPANY and BINION refused to remove the false records from her personnel file and continued to threaten her to come to work.

44.     As a consequence of DEFENDANTS' conduct, PLAINTIFFS have had to employ attorneys to prosecute this action, and have therefore incurred costs and attorneys' fees necessary to pursue this action.

**FIRST CAUSE OF ACTION**

**Sexual Battery**

**(By HANSEN Against NELSON, AMERICAN, and DOES)**

45.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

46.     California Civil Code section 1708.5 states that a person commits a sexual battery if he "[a]cts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results," or if he "[a]cts to cause an imminent apprehension of" such conduct, "and a sexually offensive contact with that person directly or indirectly results."  *See* Cal. Civ. Code § 1708.5.

47.     As alleged above, NELSON acted with substantial certainty that he would touch an intimate part of HANSEN, by grabbing HANSEN's hips and violently thrusting his penis into her

buttocks multiple times. NELSON's actions directly caused harmful and sexually offensive contact with an intimate part of HANSEN, and/or an imminent apprehension of harmful and sexually offensive contact with an intimate part of HANSEN.

48.     HANSEN did not consent to the touching.

49.     HANSEN was harmed and/or offended by NELSON's conduct.

50.     As a proximate result of NELSON's intentional sexually offensive touching of HANSEN, and HANSEN's apprehension of such touching, HANSEN has sustained and continues to sustain substantial losses of earnings and other employment benefits, and physical and mental pain and anguish, all to her damage in a sum according to proof.

51.     As alleged herein, NELSON's conduct occurred during the course and scope of HANSEN's employment with the COMPANY, and/or, on information and belief, was later ratified by the COMPANY and DOES. The COMPANY and DOES therefore are liable for NELSON's conduct, directly and/or under the doctrine of *respondeat superior*.

52.     NELSON, and by extension, the COMPANY and DOES, committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring HANSEN, from an improper motive amounting to malice, and in conscious disregard of the rights of HANSEN. HANSEN is thus entitled to punitive damages from NELSON, the COMPANY and DOES in an amount according to proof.

## SECOND CAUSE OF ACTION

### Battery

### (By HANSEN Against NELSON, AMERICAN, and DOES)

53.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

54.     As alleged above, NELSON touched HANSEN without her consent with the intent to harm and/or offend her. Such touching occurred during the course and scope of HANSEN's employment with the COMPANY, and/or, on information and belief, was later ratified by the COMPANY and DOES. The COMPANY and DOES therefore are liable for HANSEN's conduct, directly and/or under the doctrine of *respondeat superior*.

55.     HANSEN, as any reasonable person in her situation would have been, was harmed and/or offended by NELSON's touching.

56.     As a proximate result of NELSON's intentional touching of HANSEN, HANSEN has sustained and continues to sustain substantial losses of earnings and other employment benefits, and physical and mental pain and anguish, all to her damage in a sum according to proof.

57.     NELSON, and by extension, the COMPANY and DOES, committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring HANSEN, from an improper motive amounting to malice, and in conscious disregard of the rights of HANSEN.  HANSEN is thus entitled to punitive damages from NELSON, the COMPANY and DOES in an amount according to proof.

### THIRD CAUSE OF ACTION

**Assault**

**(By HANSEN Against NELSON, AMERICAN, and DOES)**

58.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

59.     As alleged above, NELSON attempted to touch HANSEN without her consent with the intent to cause harmful and/or offensive contact, and HANSEN reasonably believed that she was about to be touched in a harmful and/or offensive manner.  Such conduct occurred within the course and scope of HANSEN's employment with the COMPANY, and/or, on information and belief, was later ratified by the COMPANY and DOES.  Accordingly, the COMPANY and DOES are liable for HANSEN's conduct, directly and/or under the doctrine of *respondeat superior*.

60.     NELSON's conduct was a substantial factor in causing HANSEN harm and/or offense.

61.     As a proximate result of NELSON's assault of HANSEN, HANSEN has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

62.     NELSON, and by extension, the COMPANY and DOES, committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring HANSEN, from an improper motive amounting to malice, and in conscious disregard of the rights of HANSEN.  HANSEN is thus entitled to punitive damages from NELSON, the COMPANY and DOES in an amount according to proof.

## FOURTH CAUSE OF ACTION

### Harassment on the Basis of Sex/Gender

### Violation of FEHA, Cal. Gov't Code Section 12940(j)

### (By PLAINTIFFS Against NELSON, MCCANN, AMERICAN and DOES)

63.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

64.     The FEHA provides that it shall be unlawful for an employer or for any person to harass an employee because of a person's sex and/or gender.  *See* Cal. Gov't Code § 12940(j).

65.     At all times herein mentioned, the FEHA was in full force and effect and was binding on NELSON and the COMPANY.  This statute requires NELSON, MCCANN, AMERICAN and DOES to refrain from harassing any employee on the basis of sex and/or gender, among other things.

66.     As alleged above, during PLAINTIFFS' employment with the COMPANY, NELSON and MCCANN intentionally engaged in harassment, including creating a hostile work environment, on the basis of PLAINTIFFS' sex and/or gender, in violation of California law.  The COMPANY and DOES knew and/or should have known about the harassment in violation of the FEHA that was directed toward PLAINTIFF.

67.     A reasonable person subjected to NELSON's and MCCANN's harassing conduct would find, as PLAINTIFFS did, that the unwanted harassment so altered PLAINTIFFS' working conditions as to make it more difficult to do her job.  *See* Cal. Gov't Code § 12923(a).

68.     As a proximate result of NELSON, MCCANN, AMERICAN and DOES' harassment of PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

69.     PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

70.     NELSON, MCCANN, AMERICAN and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.   PLAINTIFFS are thus entitled to punitive damages from NELSON, MCCANN, AMERICAN and DOES in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**Discrimination on the Basis of Sex/Gender**

**Violation of FEHA, Cal. Gov't Code § 12940(a)**

**(By PLAINTIFFS Against the COMPANY and DOES)**

71.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

72.     California's Fair Employment and Housing Act (the "FEHA") provides that "the opportunity to seek, obtain, and hold employment without discrimination because of … race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, … marital status, sex, gender, gender identity… age, … is hereby recognized as and declared to be a civil right."  Cal. Gov't Code §§ 12921(a), 12940(a).

73.     The purpose of the FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, *inter alia*, a person's sex or gender.   The FEHA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general.  *See* Cal. Gov't Code § 12920.

74.     The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's sex or gender.  Cal. Gov't Code § 12940(a).

COMPLAINT FOR DAMAGES

75.     As alleged above, PLAINTIFFS' sex and/or gender were motivating factors in THE unlawful treatment described herein. As a proximate result of the COMPANY's willful, knowing, and intentional discrimination against PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

76.     PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

77.     The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights. PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

**SIXTH CAUSE OF ACTION**

**Discrimination on the Basis of Disability and/or Medical Condition**

**Violation of FEHA, Cal. Gov't Code § 12940(a)**

**(By PLAINTIFFS Against AMERICAN and DOES)**

78.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

79.     The FEHA provides that "the opportunity to seek, obtain, and hold employment without discrimination because of … disabilities . . . is hereby recognized as and declared to be a civil right." Cal. Gov't Code § 12921(a).

80.     The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's disability and/or medical condition. Cal. Gov't Code § 12940(a). Under California law, disability includes not only a current disability, but also being perceived or regarded by the employer as having or having had a condition that currently has no disabling effect but *may become* an

17

COMPLAINT FOR DAMAGES

1  impairment limiting the individual's ability to participate in major life activities in the future

2  (including working).  *See* Cal. Gov't Code § 12926(j); 2 Cal. Code. Regs. § 11065(d).

3      81.    As alleged above, PLAINTIFFS' disability and/or medical condition were motivating

4  factors in the COMPANY and DOES' actions taken against PLAINTIFFS.

5      82.    As a proximate result of the COMPANY and DOES' willful, knowing, and

6  intentional discrimination against PLAINTIFFS, PLAINTIFFS have sustained and continue to

7  sustain substantial losses of earnings and other employment benefits, and have suffered and continue

8  to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their

9  damage in a sum according to proof.

10     83.    PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees.

11  Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover

12  reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

13     84.    The COMPANY and DOES committed the acts herein despicably, maliciously,

14  fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an

15  improper and evil motive amounting to malice, and in conscious disregard of the rights of

16  PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES

17  in an amount according to proof.

18  **SEVENTH CAUSE OF ACTION**

19  **Harassment on the Basis of Disability and/or Medical Condition**

20  **Violation of FEHA, Cal. Gov't Code Section 12940(j)**

21  **(By PLAINTIFFS Against BINION, MCCANN, AMERICAN and DOES)**

22     85.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and

23  every allegation set forth above.

24     86.    The FEHA provides that it shall be unlawful for an employer or for any person to

25  harass an employee because of a person's disability and/or medical condition.  *See* Cal. Gov't Code

26  § 12940(j).

27     87.    As alleged above, BINION, and MCCANN, AMERICAN and DOES have harassed

28  PLAINTIFFS because of their disability and/or medical condition.

18

COMPLAINT FOR DAMAGES

88.     Such harassing conduct has been carried out by PLAINTIFFS' supervisors, and/or by employees whom the COMPANY and DOES know and/or should know are engaging in such conduct in violation of the FEHA.

89.     A reasonable person subjected to the harassing conduct would find, as PLAINTIFFS have, that the unwanted harassment so alters PLAINTIFFS' working conditions as to make it more difficult to do their jobs.  *See* Cal. Gov't Code § 12923(a).

90.     As a proximate result of the  BINION, and MCCANN, AMERICAN and DOES' harassment of PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

91.     PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

92.     BINION, and MCCANN, AMERICAN and DOES have committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from t BINION, and MCCANN, AMERICAN and DOES in an amount according to proof.

## EIGHTH CAUSE OF ACTION

### Failure to Accommodate Disability and/or Medical Condition

### Violation of FEHA, Cal. Gov't Code § 12940(m)

### (By PLAINTIFFS Against AMERICAN and DOES)

93.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

94.     It is unlawful under the FEHA for an employer to fail to make reasonable accommodation for the known physical disability and/or medical condition of an employee.

95.     Under the FEHA, employers who are aware that their employee has a disability and/or

medical condition have an affirmative duty to make reasonable accommodations for such disability and/or medical condition.  The duty arises even if the employee has not requested reasonable accommodation.  *See* Cal. Gov't Code § 12940(m).

96.    PLAINTIFFS are able to perform the essential job duties of their positions with reasonable accommodation for their disability and/or medical condition.  At all times during PLAINTIFFS' employment with the COMPANY, PLAINTIFFS have been qualified to do their jobs.

97.    As alleged above, DEFENDANTS did not reasonably accommodate PLAINTIFFS.

98.    As a proximate result of the COMPANY and DOES' willful, knowing, and intentional conduct, as alleged above, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

99.    PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof).

100.    The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

<u>**NINTH CAUSE OF ACTION**</u>

**Failure to Engage in the Interactive Process**

**to Accommodate Disability and/or Medical Condition**

**Violation of FEHA, Cal. Gov't Code § 12940(n)**

**(By PLAINTIFFS Against the COMPANY and DOES)**

101.    PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

102.    It is unlawful under the FEHA for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations for an employee with a known physical or mental disability or known medical condition.  *See* Cal. Gov't Code § 12940(n).

103.    Under the FEHA, employers who are aware that an employee has a disability and/or medical condition have an affirmative duty to engage in the interactive process to identify and provide reasonable accommodations for such disability and/or medical condition.  The duty arises even if the employee has not requested reasonable accommodation.

104.    The FEHA requires a timely, good faith, interactive process between an employer and an employee with a known physical or mental disability and/or medical condition which includes the exchange of essential information "without delay or obstruction of the process."  *See* 2 Cal. Code Regs. § 11069(a).

105.    As part of a timely, good-faith interactive process, an employer "shall analyze the particular job involved and the essential functions of the job."  *See* 2 Cal. Code Regs. § 11069(c)(5). An employer "shall identify potential accommodations and assess the effectiveness each would have in enabling the applicant to have an equal opportunity to … perform the essential function of the position held."  *See* 2 Cal. Code Regs. § 11069(c)(7).  An employer "shall either grant the applicant or employee's requested accommodation, or reject it after due consideration, and initiate discussion with the applicant or employee regarding alternative accommodations." 2 Cal. Code Regs. § 11069(c)(1).

106.    PLAINTIFF was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential functions of her job.

107.    As alleged above, the COMPANY and DOES did not initiate or participate in a timely, good-faith interactive process with the goal of providing reasonable accommodations.

108.    As a proximate result of the COMPANY and DOES' willful, knowing, and intentional conduct, as alleged above, PLAINTIFF has sustained and continues to sustain substantial losses of earnings and employment benefits, and has suffered and continues to suffer humiliation,

21

emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

109.     PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof).

110.     The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF.  PLAINTIFF is thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

## TENTH CAUSE OF ACTION

### Retaliation for Opposing Practices Forbidden by FEHA

### Violation of FEHA, Cal. Gov't Code § 12940(h)

### (By PLAINTIFFS Against the COMPANY and DOES)

111.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

112.     At all times herein mentioned, the FEHA required the COMPANY and DOES to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under the FEHA, including complaining of harassment, discrimination and retaliation on the basis of sex and/or gender, among other things.  Cal. Gov't Code § 12940(h).

113.     As alleged herein, during PLAINTIFFS' employment with the COMPANY, PLAINTIFFS were subjected to unlawful harassment, discrimination and retaliation based on their sex and/or gender, as well as their disability and/or medical condition, about which PLAINTIFFS complained to  the COMPANY and DOES.

114.     As alleged herein, the COMPANY and DOES retaliated against PLAINTIFFS by, among other things, altering the terms and conditions of their employment.

115.     As a proximate result of the COMPANY and DOES' retaliation against PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings

and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

116.    PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

117.    The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

**Failure to Prevent, Investigate, and Remedy Harassment, Discrimination and/or Retaliation**

**Violation of FEHA, Cal. Gov't Code § 12940(k)**

**(By PLAINTIFFS Against the COMPANY and DOES)**

118.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

119.    California law requires that employers take reasonable steps to prevent and correct wrongful behavior, including but not limited to, harassing, discriminatory, and retaliatory behavior in the workplace.  *See* Cal. Gov't Code §12940(k).  Pursuant to this statute, the COMPANY and DOES were required to take all reasonable steps to prevent harassment and retaliation based on PLAINTIFFS' sex and/or gender, disability and/or other protected characteristics.

120.    As alleged herein, the COMPANY and DOES violated the FEHA by failing to take all reasonable steps necessary to prevent the harassment, discrimination, and retaliation from occurring.  Cal. Gov't Code § 12940(k).

121.    As alleged herein, the COMPANY and DOES were made aware of harassment, discrimination and retaliation against PLAINTIFFS, but did not take immediate or corrective action to prevent further harassment, discrimination or retaliation against PLAINTIFFS.

122.    As a proximate result of the COMPANY and DOES' willful, knowing, and

intentional failure to prevent, investigate, and remedy harassment, discrimination and retaliation against PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

123.   PLAINTIFFS have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFFS are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

124.   The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

## TWELFTH CAUSE OF ACTION

### Whistleblower Retaliation

### Violation of Cal. Lab. Code § 1102.5

### (By PLAINTIFFS Against the COMPANY and DOES)

125.   PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

126.   At all relevant times, California Labor Code section 1102.5 was in effect and was binding on the COMPANY and DOES.  Section 1102.5 states, "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation…."  Cal. Lab. Code § 1102.5(b).

127.   California Labor Code section 1102.5(c) also states that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or

noncompliance with a local, state, or federal rule or regulation."  Cal. Lab. Code § 1102.5(c).

128.    At all relevant times, an employer is responsible for the acts of its managers, officers, agents, and employees.  *See* Cal. Lab. Code § 1104.

129.    As alleged herein and above, PLAINTIFFS engaged in activity protected by the California Labor Code when, among other things, PLAINTIFFS opposed harassment, discrimination and retaliation against them in the workplace, as well as NELSON's potential drinking of alcohol while on duty, which endangered the lives of hundreds of passengers and fellow crew members.  In response, the COMPANY and DOES retaliated against PLAINTIFFS by changing the terms and conditions of their employment, as alleged herein.

130.    As a proximate result of the COMPANY and DOES' willful, knowing, and intentional retaliation against PLAINTIFFS, have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

131.    The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

## THIRTEENTH CAUSE OF ACTION

### Whistleblower Retaliation

### Violation of Cal. Lab. Code § 6310

### (By PLAINTIFFS Against the COMPANY and DOES)

132.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

133.    At all relevant times, California Labor Code section 6310 was in effect and was binding on the COMPANY.  Section 6310 prohibits employers from discharging, or in any manner discriminating against an individual in the terms and conditions of her employment "because the

25

employee has made a bona fide oral or written complaint to… his or her employer… of unsafe working conditions, or work practices, in his or her employment or place of employment…" Cal. Lab. Code § 6310(b).

134.    As alleged herein and above, PLAINTIFFS engaged in activity protected by the California Labor Code when PLAINTIFFS complained to the COMPANY and DOES of unsafe working conditions caused by the harassment, assault, and battery they experienced, in addition to NELSON's potential drinking of alcohol while on duty, which jeopardized the safety of the COMPANY's employees.  In response, the COMPANY and DOES retaliated against PLAINTIFFS by changing the terms and conditions of her employment, as alleged herein.

135.    As a proximate result of the COMPANY and DOES' willful, knowing, and intentional retaliation against PLAINTIFFS, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

136.    The COMPANY and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from the COMPANY and DOES in an amount according to proof.

## FOURTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (By PLAINTIFFS Against ALL DEFENDANTS)

137.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

138.    A person intentionally inflicts emotional distress when he/she engages in extreme and outrageous conduct with either: (1) an intent to cause emotional distress; or (2) reckless disregard of the probability of causing emotional distress, and actually does cause severe emotional suffering. *See Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

139.   DEFENDANTS owed PLAINTIFFS a duty of care not to cause PLAINTIFFS emotional distress.

140.   As alleged herein and above, DEFENDANTS engaged in unlawful behavior in relation to PLAINTIFFS that

caused PLAINTIFFS severe and extreme emotional distress that exceeded the normal risks of the employment relationship.

141.   DEFENDANTS were aware that treating PLAINTIFFS in the manner alleged above would cause PLAINTIFFS extreme hardship.

142.   DEFENDANTS breached their duty to PLAINTIFFS by way of their own conduct, as alleged herein and above.

143.   Such acts of DEFENDANTS were intentional, extreme, and outrageous, and were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing PLAINTIFFS serious emotional distress.

144.   As a proximate result of DEFENDANTS' extreme and outrageous conduct, PLAINTIFFS have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

145.   DEFENDANTS committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFFS.  PLAINTIFFS are thus entitled to punitive damages from DEFENDANTS in an amount according to proof.

### FIFTEENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (By PLAINTIFFS Against ALL DEFENDANTS)

146.   PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

147.   DEFENDANTS owed PLAINTIFFS a duty of care not to cause PLAINTIFFS emotional distress.

148.   As alleged herein and above, DEFENDANTS breached their duty to PLAINTIFFS

27

by way of their own conduct, as alleged herein and above.

149.     DEFENDANTS knew, or should have known, that treating PLAINTIFFS in the manner alleged above would cause PLAINTIFFS extreme hardship.

150.     As a proximate result of DEFENDANTS' negligent conduct, PLAINTIFFS have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

### SIXTEENTH CAUSE OF ACTION

**Negligent Retention/Supervision**

**(By PLAINTIFFS Against the COMPANY and DOES)**

151.     PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

152.     California law makes an employer liable for an employee's negligence, recklessness or intentional wrongful acts when the employer knew or should have known that the employee was a risk to others.  *Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996).

153.     Pursuant to California law, "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit.'" *Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556, 1564-1565 (1996).   The Restatement (Second) of Agency section 213, provides in pertinent part, that "[a] person conducting an activity through servants or agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: … (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others…"  *Id.*; *see also*, *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 836 (1992); *Delfino v. Agilent Technologies, Inc.,* 145 Cal. App. 4th 790, 815 (2006).

154.     The COMPANY and DOES had a duty to protect PLAINTIFFS from NELSON's tortious conduct, as alleged above.  The COMPANY and DOES had knowledge of NELSON's past misconduct that made him unfit for his position, including that other pilots had placed him on their "no-fly list," but took no action in response.  Instead, the COMPANY and DOES retained his employment, thereby ratifying his conduct, with a conscious disregard of PLAINTIFFS' rights and safety.   The COMPANY and DOES are therefore liable for the deleterious consequences of

NELSON's wrongful conduct.  Moreover, NELSON was responsible to the COMPANY and DOES, which did not monitor his activities, and such failure to supervise NELSON's activities is negligence *per se*.

155.    As a proximate result of the COMPANY and DOES' tortious conduct, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

### SEVENTEENTH CAUSE OF ACTION

**Failure to Reimburse Business Expenses**

**Violation of Cal. Lab. Code § 2802**

**(By PLAINTIFFS Against the COMPANY and DOES)**

156.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

157.    At all relevant times herein, California Labor Code section 2802 requires an employer to indemnify an employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…." Cal. Lab. Code § 2802(a).  This includes costs associated with the use of personal cell phones for work-related purposes.

158.    As alleged herein, PLAINTIFFS incurred necessary business-related expenses and costs that were not reimbursed by the COMPANY and/or DOES, including, costs for mileage and parking to meet with the COMPANY's Human Resources representative following PLAINTIFFS' complaint about NELSON's assault, battery, and harassment.  In violation of Labor Code section 2802, the COMPANY and DOES failed to reimburse PLAINTIFFS for these necessary expenses incurred for the COMPANY and/or DOES' business.

159.    PLAINTIFFS have been damaged in an amount according to proof at trial, and seek all reimbursements owed, interest, attorneys' fees, expenses, and costs of suit.

160.    As a proximate result of the COMPANY and DOES' tortious conduct, PLAINTIFFS have sustained and continue to sustain substantial losses of earnings and other employment benefits, and have suffered and continue to suffer humiliation, emotional distress, and mental and physical

pain and anguish, all to their damage in a sum according to proof.

## EIGHTEENTH CAUSE OF ACTION

### Violation of Ralph Act

### Violation of Cal. Civ. Code section 51.7

### (By PLAINTIFFS Against the COMPANY and DOES)

161.    PLAINTIFFS incorporate by reference and reallege as if fully stated herein each and every allegation set forth above.

162.    California Civil Code section 51.7(b) entitles individuals "to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of … any characteristic listed or defined in subdivision (b) or (e) of Section 51," including sex/gender.

163.    Pursuant to California Civil Code section 52(b), "[w]hoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:" (1) punitive damages; (2) a civil penalty of $25,000 to the person denied the right; and (3) attorneys' fees.

164.    As set forth in the allegations above, DEFENDANTS committed acts of violence against PLAINTIFFS because of their sex/gender, as NELSON, an AGENT of THE COMPANY and DOES, committed violent acts against each of PLAINTIFFS, which were substantially motivated by PLAINTIFFS' sex/gender.

165.    As set forth in the allegations above, PLAINTIFFS were harmed by this misconduct, which was a substantial factor in causing PLAINTIFFS ongoing harm.

166.    As a result of DEFENDANTS' conduct, each of PLAINTIFFS has sustained and continues to sustain substantial losses of earnings and other employment benefits, and each has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

167.    As a result of DEFENDANTS' conduct, PLAINTIFFS are also each entitled to a civil penalty in the amount of $25,000, punitive damages, and attorneys' fees, in sums according to proof.

**PRAYER FOR RELIEF**

Wherefore PLAINTIFFS JANETTE BECKMAN and LEEANNE HANSEN respectfully pray for judgment and relief against DEFENDANTS AMERICAN AIRLINES GROUP INC., AMERICAN AIRLINES, INC., SIGSBEE "JOHN" NELSON, TIM MCCANN, CAMERON BINION, and DOES 1 through 25, inclusive, and each of them, as follows:

1.    For compensatory damages, including but not limited to lost past and future wages, emotional distress damages, and damages for injury and medical expenses, in an amount to be ascertained at trial;

2.    For civil penalties in the amount of $25,000 for each PLAINTIFF, pursuant to California Civil Code section 52(b);

3.    For punitive damages in an amount sufficient to punish or make an example of DEFENDANTS pursuant to California Civil Code sections 52 and 3294, and all other applicable statutes;

4.    For reimbursement of necessary business expenses PLAINTIFFS have incurred;

5.    For all available injunctive, equitable and other relief, including remedies authorized by California Government Code section 12965(c);

6.    For "affirmative relief" as defined in California Government Code section 12926(a);

7.    For interest at 10% per annum, pursuant to California Labor Code section 2802, California Civil Code sections 3287, 3288, and/or any other applicable provision providing for pre-judgment interest;

8.    For reasonable attorneys' fees and costs, including expert costs;

9.    For declaratory relief; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

10.     For such further relief that the Court may deem just and proper.

DATED:  July 2, 2020                                    GUNN COBLE LLP


By: _____
Catherine J. Coble
Beth A. Gunn

Attorneys for Plaintiffs
JANETTE BECKMAN and LEEANNE
HANSEN


## DEMAND FOR JURY TRIAL

PLAINTIFFS JANETTE BECKMAN and LEEANNE HANSEN hereby demand a jury trial with respect to all issues triable of right by jury.  The amount demanded exceeds $25,000.  *See* Cal. Gov't Code § 72055.


DATED:  July 2, 2020                                    GUNN COBLE LLP


By: _____
Beth A. Gunn
Catherine J. Coble

Attorneys for Plaintiffs
JANETTE BECKMAN and LEEANNE
HANSEN

COMPLAINT FOR DAMAGES

# EXHIBIT B

Electronically FILED by Superior Court of California, County of Los Angeles on 07/30/2020 02:32 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Catherine Coble | SBN: 223461<br>Gunn Coble LLP<br>101 S. 1st Street 407  Burbank, CA 91502<br><br>TELEPHONE NO.: (818) 900-0695 | FAX NO. (818) 900-0723 | E-MAIL ADDRESS *(Optional):* maggie@gunncoble.com<br>ATTORNEY FOR *(Name):* Plaintiff: Janette Beckman; LeeAnne Hansen | |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: CENTRAL DISTRICT

| PLAINTIFF: Janette Beckman; LeeAnne Hansen | CASE NUMBER: 20STCV25029 Dept: 15 |
|---|---|
| DEFENDANT: American Airlines Group, Inc., et al. | |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>AA |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:

   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Addendum,Notice of Case Assignment**

3. a.  Party served *(specify name of party as shown on documents served):*

   **AMERICAN AIRLINES, INC., a Delaware corporation**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Albert Demonte - Authorized to Accept Service**

4. Address where the party was served: **818 W 7th St Ste 930**
   **Los Angeles, CA 90017-3476**

5. I served the party *(check proper box)*

   a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 7/28/2020   (2) at *(time):* 11:55 AM

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*        or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/CW351237** |
|---|---|---|

| PETITIONER: Janette Beckman; LeeAnne Hansen | CASE NUMBER: |
|---|---|
| RESPONDENT: American Airlines Group, Inc., et al. | 20STCV25029 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                     (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **AMERICAN AIRLINES, INC., a Delaware corporation**
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: **Arman Mardigian - Cal West Attorney Services, Inc**

  b. Address: **1201 W. Temple Street  Los Angeles, CA 90026**

  c. Telephone number: **(213) 353-9100**

  d. **The fee** for service was: **$ 60.00**

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner    ☐ employee    ☑ independent contractor.

      (ii) Registration No.: **6668**

      (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **7/28/2020**

**Cal West Attorney Services, Inc**
**1201 W. Temple Street**
**Los Angeles, CA 90026**
**(213) 353-9100**
**www.calwest.info**

_____
**Arman Mardigian**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

# EXHIBIT C

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Catherine Coble \| SBN: 223461<br>Gunn Coble LLP<br>101 S. 1st Street 407 Burbank, CA 91502<br><br>TELEPHONE NO.: (818) 900-0695 \| FAX NO. (818) 900-0723 \| E-MAIL ADDRESS *(Optional):* maggie@gunncoble.com<br>ATTORNEY FOR *(Name):* Plaintiff: Janette Beckman; LeeAnne Hansen | FOR COURT USE ONLY |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 111 NORTH HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: CENTRAL DISTRICT

| | |
|---|---|
| PLAINTIFF: Janette Beckman; LeeAnne Hansen | CASE NUMBER: 20STCV25029 Dept: 15 |
| DEFENDANT: American Airlines Group, Inc., et al. | |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>AA |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* Addendum,Notice of Case Assignment
3. a. Party served *(specify name of party as shown on documents served):*
   **AMERICAN AIRLINES GROUP INC.,a Delaware Corp.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Kim Hightower. - Intake Specialist/Authorized to Accept**
4. Address where the party was served: **1999 Bryan St Ste 900**
   Dallas, TX 75201-3140
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 8/4/2020  (2) at *(time):* **12:05 PM**
   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/CW351242 |

| PETITIONER: Janette Beckman; LeeAnne Hansen | CASE NUMBER: |
|---|---|
| RESPONDENT: American Airlines Group, Inc., et al. | 20STCV25029 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                               (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **AMERICAN AIRLINES GROUP INC.,a Delaware Corp.**

under the following Code of Civil Procedure section:

☑ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)     ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)
☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                                   ☐ other:

7. **Person who served papers**

a. Name: **Keith Smith - Cal West Attorney Services, Inc**

b. Address: **1201 W. Temple Street  Los Angeles, CA 90026**

c. Telephone number: **(213) 353-9100**

d. **The fee** for service was: **$ 150.00**

e. I am:

(1) ☑ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☐ registered California process server:

(i) ☐ owner   ☐ employee   ☐ independent contractor.

(ii) Registration No.:

(iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **8/14/2020**

**Cal West Attorney Services, Inc**
**1201 W. Temple Street**
**Los Angeles, CA 90026**
**(213) 353-9100**
**www.calwest.info**

| **Keith Smith** | ▶                           (SIGNATURE) |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | |